Robert Rocha for Mr. Fausto Lopez Mr. Lopez takes issue with the district court's finding that the information that the officers had in this case at the time of the encounter with Mr. Lopez was actionable. Can I ask you a question? I mean, this is one of those cases, as often happens, where things move step by step. And it seems first they stop the van short of the garage. They talk to Mr. Lopez, who's driving the van. Maybe the informant has given them enough to allow that. Then there's a search of the garage. How much time between the search of the garage and the conversation about whether he will consent to the search of the house happens? Is that in the record anywhere? Your Honor, I believe it's in the record, and I think according to the testimony of at least Agent Soria, the search of the garage lasted a matter of minutes. It was a small space. Five minutes? Thirty minutes? Judge, I think his testimony was that it lasted about two to three minutes. It was a small space. There was car repair equipment in there, welding equipment, clearly a garage that was being used to repair cars. I think that the more relevant question is what happens the day prior, on February the 10th, when they receive information from a person who's not a volunteer, who becomes a good citizen and decides to go to the police and say, hey, I have information about drug trafficking. This is a person that's engaged in an encounter with one of the same law enforcement agents, Agent O'Reilly. No, I appreciate it. The reason I ask the other question you're not answering is because to the extent your theory is that after the garage search, his detention, Mr. Lopez's detention, was inappropriately prolonged, at that point, any consent that he may have given to search the house would be tainted by his having been kept in custody longer than he should have been. So I was wondering, you know, does the question about consent come 30 seconds later? Do they fiddle around with paperwork for a few minutes and then ask him? If the record doesn't show it, that's fine. You can just tell me that. But it's of some interest to me. My sense of the testimony and the events that occurred is, first of all, there was no paperwork that was being filled out. Specifically, there was no written consent to either the search of the garage or the search of the residence, keeping in mind that the very scant information the agents had only related to the garage. And therefore, it's our position that once that had been dispelled by the search and no contraband or any evidence whatsoever of illegal activity having taken place, there should have been a more pointed discussion with Mr. Lopez about continuing a further search of the house, which had never been mentioned by the government's source of information. Right. They've had nothing on the house other than his consent, right? Excuse me. Judge Rohwer? I was wondering if officers tell a citizen that he is not under arrest and is free to leave, should a court assume that the citizen will take the police officer at his or her word? Well, first of all, in this particular case, I think it's unclear as to whether or not Mr. Lopez was actually ever told that. That information never made its way into any written report. Don't we have findings from the district judge that it did? We do, Your Honor. Well, what I want to get back to, though, what I think is relevant to that same question, is the totality of the events that lead us to that point. We're dealing with a source of information who is not engaged in a consensual encounter with the police in the first place. And more importantly, the information he gives is not very detailed at all. He talks about something that happened in the past, doesn't put any time frame on it. He admits he's part of the criminal milieu himself. But most importantly — Counsel, I'm sorry. I understood the question from Judge Rovner to be about the conversation between Agent Soria and Mr. Lopez. Well, I think what should have occurred at that point to really have a distinct break in flowing back from the seizure of his person in the alleyway, being escorted by agents back to — He was actually leaving, right, at the time he was found? Yes, he was driving away from the garage. Two law enforcement agents in separate vehicles box his car in. They order him out of the vehicle. They conduct a pat-down search of his person. This is clearly not a consensual encounter. But what I think is most relevant — Well, that much they said they were supporting by reasonable suspicion based on what the informant told them. And we recognize you have your issues with the informant. But there is an informant who's identified him by name. He's only identified him by name. But most importantly, and I think it's a point that was not properly addressed by the district court, is at about 8 o'clock at night on February the 10th, the source of information and the law enforcement agents separate. There's never any further contact with that individual. That should have raised a high level of concern with law enforcement about the veracity of the information this individual gave. Most importantly, this claim about him making a statement against penal interest, well, what he said was he was part of a drug trafficking organization, but there was no evidence to support that claim. The drugs that were seized that day, and this should not go unnoticed, this is a building that was a single-family residence converted into three separate living units. This isn't some multi-unit high-rise building where they happen to find drugs in some unit that it's not likely this individual would have known anything about. He disavows any knowledge of those drugs. He doesn't admit that he has any connection to those drugs. The information that he gave was not sufficient to be actionable by the law enforcement agents, specifically because they never corroborated any of the information. They obtained a picture of Mr. Lopez on the 11th, but they never showed that picture to the source of information. The source of information was not present in the alley with the agents when the takedown occurred. There's no verification that the person they're detaining is the person that this source of information is talking about. Clearly, he was never shown that photograph. Mr. Rocha, could I ask you to see if I understand the record of the district judge's findings correctly, that with the initial stop, officers took keys and cell phone? Yes. Were they ever returned? No. Were they ever offered to be returned? No. Thank you. Basically, it's your argument that he could never really think he was free to leave when his car is sitting there. Well, at that point, an agent had gotten it. And he has no keys. Well, he never had control of the vehicle. Another agent got in the vehicle and moved the vehicle. They didn't say to him, hey, why don't you drive back over to the garage? We'd like to have a conversation with you. That's not how this whole encounter came into existence. This is a forcible detention not sufficiently based upon reasonable information from a source of information. This is not an average citizen providing information to the police. This is a person that's part of the criminal milieu. Well, that's often the case, and I have a little trouble, you know, if somebody says to the police, I'm part of a drug trafficking organization, it may not be enough to convict on, but it's certainly a statement against penal interest. But there are a number of stages to this, and nothing compromising is found about Mr. Lopez until the house is searched. That's correct, Your Honor. But it's the totality of all that events that taints the consent that the court found was given. Is it correct that you've got two different theories here? One is that the initial stop was unjustified. Correct. And the second, in essence, is that it expanded in scope beyond what was reasonable and pretty darn close to a full custodial arrest. Correct, Your Honor. Thank you. Okay, if you want to save any rebuttal time, I would say this is a good time to do it. Thank you. All right, thank you. All right, Mr. Daniel. Good morning, Your Honors. May it please the Court. The district court properly denied the defendant's motion to suppress. So here's what bothers me about this case. It's really the second theory that Judge Hamilton just mentioned. Even if we give you the informant, the informant is speaking exclusively about the garage. They pat Mr. Lopez down. They find nothing. They look in the car. They find nothing. They look in the garage. They find nothing. At that point, they should have been done. They did not have any reason to prolong the seizure of Mr. Lopez beyond what they had. And we have rules. The Supreme Court itself has said in Royer and in our Johnson case that if a stop is being unreasonably prolonged, then any consent that's given during that extra time is presumptively invalid. And this looks like that case to me. There is absolutely nothing they have pointing to the house as a potential place of drugs or anything else for that matter. Your Honor, as the Court mentioned, this unfolded in stages. And there's no stage where the house becomes involved. Nothing. They just have the garage. A person can consent to the extension of an investigatory stop, and that's what happened here. But he didn't. He was in custody. They don't really let him go. They don't give him his keys back. There are no objective signs that he really is now free to go. They don't give him his keys. They don't give him his phone. He is completely in their control at the time they say, oh, by the way, can we search the house in clumsy Spanish. Your Honor, I disagree in the sense that after the defendant went back to the garage, he started talking to another agent, Agent Soria, and Agent Soria's first admonitions to the defendant were, you're not under arrest. You're free to go. You don't have to answer. You're not under arrest. We understand that was said. No, you didn't. We understand that was said, but it's pretty hard to reconcile that with all of the other circumstances. Yeah. In particular. Go ahead. Sorry. Go ahead. Sorry. Well, thank you. Nowhere in your brief did you mention the fact that the officers took his phone, took his keys. I mean, if the police are holding onto someone's car keys and cell phone, what reasonable person just walks off and leaves behind his car, his car keys, his telephone? What reasonable person wouldn't think that he or she was under arrest? Your Honor, when Mr. Lopez is asked by Agent Soria, he can say no, at which point he's at his house. It's not as if he's going somewhere. But he was on his way someplace else. That is true, Your Honor, but he can say, I don't want to answer any questions and can I have my keys back? So he forfeits his car and his phone at the price of being able to go anywhere? He can ask, am I under arrest, or the agent just told him he wasn't, and since I'm not under arrest, can I have my keys back and can I go on my way? Instead, when asked these questions, he essentially agreed to continue the conversation with the agent and agreed to continue to allow them to search the garage and ultimately the house. If the court is inclined to say that the house, the search of the garage was consensual based on the sequence of events and the questions posed to the defendant by Agent Soria, then it makes sense that the house was also reasonable. No, they're two very different searches. And there are reasons to question the consent to the garage as well, given that, I've got to say, this looks to me a lot more like a custodial arrest than a Terry stop. Your Honor, the district court here heard testimony from the officers and from the defendant and the defendant's brother as well. The district court made credibility findings. I understand that, even under the government's version. I'm sorry, Your Honor? Even under the government's version, this looks an awful lot like a custodial arrest. I respectfully disagree in that the defendant, though he was surrounded by law enforcement officers, he was told that he wasn't under arrest and that he was free not to answer questions by the officers. But can an officer's actions negate his words when he says you are free to go? Your Honor, that's true, but this is not a situation where the officers were yelling. This is not a situation where the officers had guns drawn. This was a normal... They've just totally disabled him from actually going anywhere. He doesn't have the keys to his place. For all we know, it means he couldn't get in there. We have to be careful, Your Honor, because that initial stop was based on reasonable suspicion. Actually, I'm not so sure about that. I'd like to ask about that. Certainly. Because the information from the informant doesn't seem to fit with really anything that the officers or agents observed that day. They had the person, but they didn't have the pattern that was described by the informant. I understand that you might be curious and you might want to do a consensual walk and talk with this fellow, but I'm not sure I see reasonable suspicion justifying the full intrusions of a Terry stop, including the use of force, if necessary, to stop him from walking away, and what we have here, the frisk as well that the district judge found was not justified. Your Honor, with respect to the reasonable suspicion, as the courts acknowledged, there was an informant who the law enforcement officers encountered the day before. He made inculpatory statements. The officers were at that individual's house. They knew where he lived, and he provided information saying that, I've gone to that house on several occasions and tied to that garage. Not the house. The informant never ties drugs to the house. That's true. He went to the garage. I dropped the car off at that location, the garage of that location, and I received either drugs or money from an individual named Fausto. The officers go there the next day, and they see Fausto Lopez go up to that garage, and they see him carry bags into that garage. While it could be innocuous under other circumstances, here with the knowledge provided by the informant, that provides a reasonable suspicion or it provides a basis for the officers to conduct the investigatory stop because whether the informant went in the garage, it's reasonable to assume that. So they're patting down the garage? I mean, you call it an investigatory stop, but they stopped Mr. Lopez. That's true. How can they justify a full-blown search of the garage based on finding nothing on Mr. Lopez? You justify it with Mr. Lopez's consent, which the district court found was freely and voluntarily given. With respect to the stop itself and the reasonable suspicion, this activity of carrying something into a location where another individual says he has received drugs or money from, and it happens to be the individual that the informant identified provides the reasonable suspicion. As the district court noted, the officers stopped Mr. Lopez a few city lots down from that garage, and they did the pat-down. This court has ruled on several occasions that knowledge that an individual is participating in narcotics trafficking justifies on its own the pat-down frisk. Well, the judge has a problem with the pat-down. I understand that, Your Honor. I'm just noting that. I know in a footnote you guys tried to say, well, we don't agree with that. We don't, Your Honor, and it's an issue that's before the court because the pat-down is raised by Mr. Lopez on appeal. With respect to after that, he's walked back to the garage, and at that point Agent Soria encounters him and he lets him know that you're not under arrest and you don't have to answer my questions.  Mr. Daniel, let me go back to Chief Judge Wood's first question, which is what evidence we have of the defense counsel, and that is what evidence do we have in the record about the duration of this whole episode? Your Honor, the record at 212, lines 6 through 7, the defendant on cross or during examination by his counsel said that the search of the garage took less than five minutes. I'm talking about start to finish from the detention, the stop of the van, and to any points you can give us along the way. Certainly. The milestones that jump out to me, Your Honor, are that, as Judge Shaw found, it was the initial stop, which allowed for the pat-down of the defendant in the search of the vehicle, then walking back a few city blocks. I don't have timelines or actual minutes assigned to that. Then we have the defendant's testimony that the search of the garage took five minutes or less, and then at that time, once the search was complete, Agent Soria asked for consent to search the house. So no idea how long this took? Not altogether. Bits and pieces, Your Honor. Reports? Did the agent's reports give any indications? They may, but I don't have that information before me now, and it's not in the trial transcript. Okay. Your Honor, in short, the district court correctly found that the stop was based on reasonable suspicions. The informant provided specific and articulable facts from which the officers can conduct the investigatory stop. Once that stop was conducted, the defendant voluntarily went back to his garage, and he consented to the search of that garage. Once that search was complete, that search taking less than five minutes, the defendant consented to the search of his home, and for those reasons. If I could, what did the informant say about his most recent visit to the garage? I don't know how recently he had been there. One note, Mr. Rasha addressed the narcotics that were found in another apartment in the house. That was done, it was a separate apartment. As far as when the last time the informant had been, to Mr. Lopez's house, I don't have that information right now, Your Honor. Thank you. We would ask that the court affirm the district court's denial of the motion to suppress. All right, thank you very much. Anything further, Mr. Rasha? Yes, Your Honor. Your Honor, the initial stop of Mr. Lopez was not based on a reasonable articulable suspicion. All he gave him was the name. Everything that flowed from that incident is tainted by the forcible action that the police took to begin the encounter with Mr. Lopez. Two vehicles coming in opposite directions, blocking in Mr. Lopez, forcing him to stop his vehicle, ordering him out of the car, conducting an unlawful pat-down search of his person, and then taking him hand-in-hand as they walk all the way back to the garage, and then they conduct a search of the garage. Didn't the district judge say nobody laid a hand on him after the frisk? Well, even assuming that that is, and I accept what Judge Shah said on that point, but at the very least, these are two law enforcement agents walking in close proximity to Mr. Lopez. They have his belongings. They take his van. He's clearly not free to go anywhere other than with these agents. So anything that occurs flowing from that is tainted by that primary illegality. The timing of the events, we have a quick search of the garage, which at the very least dispelled the information they got from the source of information and your specific question regarding the recency. He never said when any of these events occurred. He didn't say he had been to Lopez's house last week. He didn't say he was there last month. He never told the agents anything. But the crucial blow to the credibility of the source of information and the lack of effort by the law enforcement agents to corroborate anything he said lied in the claim that the source of information gave the agents two telephone numbers by which he communicated with Mr. Lopez. They conducted no investigation of those phone numbers, and more importantly they never asked the source of information to attempt to communicate with Mr. Lopez to corroborate anything he may have told them that day. Wrapped up in all that is the informant ditches the law enforcement agents within hours. There's no further communication which should have signaled to the agents that he was not trustworthy. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement and the court will take a brief recess.